IN RE ESTATE OF CHRIST M. BALAFAS.
PERICLES ANGELOS AND ANOTHER
v. MATHEOS K. BALAFAS.

225 N. W. 2d 539.

January 17, 1975—No. 44678.

John C. DeMoss and Leslie Erickson, for appellants.
Robins, Davis & Lyons and Sidney S. Feinberg, for respondent.

---

Heard before Peterson, Todd, and Scott, JJ., and considered and decided by the court en banc.

PER CURIAM.

This is an appeal from a judgment of the Hennepin County District Court. Three appeals from an order of the probate court allowing the final account of special administrators and awarding them fees and their counsel attorneys fees for services rendered to the estate of Christ M. Balafas were consolidated for trial. The district court found that the special administrators were not entitled to fees from the estate; that the value of the services rendered to the estate by the attorney for the special administrators was $500; and that respondent Matheos K. Balafas, a legatee under the will of decedent which was admitted to probate, was entitled to judgment against Stamata and Pericles Angelos, the special administrators, for his costs and disbursements. Following entry of judgment, the Angeloses and their attorney appealed, and respondent filed a notice of review challenging the award of attorneys fees and the court's failure to surcharge the special administrators with interest and tax penalty incurred by decedent's estate.

The initial actions were precipitated by the death of Christ M. Balafas on October 7, 1969, and concerned an estate of securities valued at approximately $400,000, two commercial buildings, and his home. Stamata Angelos, adopted daughter of the decedent, was the sole legal heir and next of kin, and she thus petitioned the Hennepin County probate court for the appointment of herself and her husband as special administrators of the estate. They were appointed on October 15, 1969. Stamata further petitioned the probate court for admission to probate of the last will and testament of the decedent, dated October 6, 1969, the day before his death.

Objections were filed by Matheos Balafas, nephew of the decedent, and a hearing was held in the Hennepin County probate court on December 18, 1969. On May 13, 1970, it was ordered that

the will dated Ocotber 6, 1969, be allowed as the last will of the decedent. Upon appeal, the district court with an advisory jury reversed the order on December 31, 1970. An appeal was taken to this court, and, in a decision filed April 14, 1972, it was held that the extensive and detailed findings of the trial court, concluding that the will executed by decedent on October 6, 1969, was the result of undue influence exercised over the testator by the Angeloses, were in no respect clearly erroneous. In re Estate of Balafas, 293 Minn. 94, 198 N. W. 2d 260 (1972).

On May 4, 1971, the probate court appointed Midland National Bank as the special administrator in place of Stamata and Pericles Angelos. The bank filed its acceptance, taking control of the assets on September 15, 1971.

On November 3, 1971, the probate court approved an accounting of the special administrators and allowed $250 in fees to Stamata and to Pericles Angelos and $500 in fees to their attorney. Matheos Balafas, the Angeloses, and their attorney appealed to the district court and the appeals were consolidated for trial. The district court affirmed the award of $500 attorneys fees but found that the Angeloses were not entitled to any compensation as special administrators.

The issues presented here are as follows:

(1)   Did the district court err in denying fees to the special administrators?

(2)   Did the district court err in affirming the awarded attorneys fees despite claims by the attorney that the value of his services was far greater than the fees allowed?

(3)   Should the special administrators be surcharged with Federal estate tax interest and penalty as a result of their efforts to probate a will signed by the testator after their exertion of undue influence upon him?

1-2.   Minn. St. 1971, § 525.49, applicable to these proceedings,[1] provides in part:

---

[1] Repealed effective August 1, 1975, by L. 1974, c. 442, art. VIII, § 524.8-102.

"Every representative shall be allowed his necessary expenses incurred in the execution of his trust and shall have such compensation for his services as the court shall deem just and reasonable. An attorney performing services for the estate at the instance of the representative shall have such compensation therefor out of the estate as the court shall deem just and reasonable."

In its findings of fact, the district court concluded:

"In view of the undue influence exercised over Christ M. Balafas by Pericles Angelos and Stamata Angelos, as found by the District Court and affirmed by the Supreme Court, the services rendered by them as Special Administrators are not compensable. They cannot collect fees for services involved in assisting an estate conserve and dispose of assets pursuant to a will they brought about by undue influence.

"Mr. DeMoss rendered considerable legal service in the matter as well as expending more time than usual with the special administrator clients because of their unfamiliarity with the language. Also, much of his time was utilized in quasi business, as distinguished from legal, matters and some expended even after the Midland Bank was appointed Special Administrator on May 4, 1971. Accordingly, the amount of legal fees allowed must be such as were clearly necessary as a lawyer and apart from those rendered by virtue of the will contest. I do not find $500.00 to be unreasonable for that service. The remainder of the service is either non-legal, due to language difficulties, or chargeable to the undue influence by the special administrators. This is not to say that Mr. DeMoss cannot recover substantially more from his clients but only that he cannot recover more from the estate."

The appellants strongly suggest that the statute, framed in mandatory terms, requires that the special administrators and their attorney be compensated for services rendered to the estate. However, our determination must rather focus upon whether

or not the allowances may stand as "just and reasonable" under the statute.

This court has stated often that the allowance of attorneys fees and those of an administrator rests largely in the discretion of the court,[2] absent specific agreements with the testator. In re Estate of Weisberg, 242 Minn. 150, 64 N. W. 2d 370 (1954); In re Estate of Simmons, 214 Minn. 388, 8 N. W. 2d 222, 10 N. W. 2d 481 (1943); Distributors Supply Co. Inc. v. Estate of Shablow, 253 Minn. 1, 92 N. W. 2d 83 (1958). Further, findings of fact made by the court shall not be set aside unless clearly erroneous.[3]

Obvious from the findings of fact is that the district court duly considered such evidence as the undue influence exercised by the special administrators and the "quasi business" services rendered by their attorney. Standards which have been applied include that all "legal services" furnished for the benefit of an estate should be taken into consideration in determining just and reasonable attorneys fees, and that the services shall inure to the benefit of the estate. In re Estate of Baumgartner, 274 Minn. 337, 144 N. W. 2d 574 (1966).

In light of the record before us, it appears that the allowance of attorneys fees for that part of the services rendered which were of a legal nature was neither unjust nor unreasonable, and that therefore there was no abuse of the trial court's discretion.

Further, the finding that the special administrators were not entitled to compensation was a similarly valid exercise of the court's discretion. As well stated by respondent, although the finding by the district court was not particularly artistic, it is not clearly erroneous and thus does not justify reversal.

We do not hold, as respondent would suggest, that in all cases where a will has been found to be the result of undue influence, fees should be disallowed. It is at least arguable that, despite the fact the will was ultimately held invalid, even those who have

---

[2] See, L. 1974, c. 442, art. IX, § 3 (Minn. St. 525.515), effective August 1, 1975.

[3] Rule 52.01, Rules of Civil Procedure.

improperly obtained its execution and then proffered it for probate will make every effort to preserve the assets of the estate during the special administration because they would benefit by such conservation. However, in relating the appointment as special administrators directly to the offering of the invalid will, we must affirm the findings of the district court. Exemplary language may be gleaned from Matter of Kaufmann, 51 Misc. 2d 560, 563, 273 N. Y. S. 2d 533, 537 (1966), wherein it was stated:

"* * * [W]here, as here, the jury has found that the named executor exercised undue influence to procure the execution of a will in his own favor and the performance of this so-called 'duty' becomes the means by which a fraud may be perpetrated, the allowance of a fee would constitute a perversion of justice * * *."

We therefore affirm the district court's determination as to just and reasonable compensation for services rendered to the estate.

3. Respondent further claims that the special administrators should have been surcharged with interest and penalty for failure to timely file Federal estate tax returns. The court found:

"While the handling of the tax situation so as to create additional taxes and interest was not exemplary, there is no clear indication that this was the fault of the Special Administrators, or their attorney, but rather a lack of mutuality between them and the Midland Bank. The additional interest was undoubtedly compensated for by the additional dividends and interest earned from the corpus of the estate. While the tardiness of filing the tax returns resulted in a penalty, it has not been established as a matter of law that the fault is sufficiently clear that the administrators should be surcharged."

Such a finding is supported by the evidence, and, although it is apparent that the delay in transferring the assets and the noncooperation between the parties were certainly germane, such

evidence is not conclusive of the necessary element of fault. We therefore conclude that the district court's determination that a surcharge was not clearly necessitated was proper.

Affirmed.

MR. JUSTICE MACLAUGHLIN took no part in the consideration or decision of this case.